Argued and submitted December 21, 1987, affirmed October 19, 1988

In the Matter of the Marriage of

BALLARD,
*Respondent,*
*and*

BALLARD,
*Appellant.*

(86C-30223; CA A43993)

763 P2d 1051

David M. Gordon, Newport, argued the cause for appellant. On the brief were Thomas F. Searcey, Newport, and Macpherson & Associates, Newport.

George Eder, Salem, argued the cause for respondent. With him on on the brief was Swaim, Betterton & Eder, P.C., Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

### NEWMAN, J.

Wife, age 64, appeals a dissolution judgment that divided the property, ordered wife to pay husband, age 85, a total of $32,334.53 with interest and granted no spousal support. We affirm.

■    The parties had been married four years. Husband filed the action in January, 1986. In March, his attorney applied for appointment of a guardian *ad litem* on the ground that husband was incapable of proceeding without assistance. ORCP 27B. On September 8, 1986, wife moved to dismiss on the ground that husband was mentally incompetent. The court announced that it would rule on the motion at trial. At trial, husband's attorney called him as a witness.[1] After hearing husband's testimony, the court ruled that he was not competent to testify. The court, however, denied defendant's motion to dismiss. It ruled that ORCP 27B allows the guardian *ad litem* to maintain the dissolution action on husband's behalf. Wife assigns that ruling as error.

The court did not err. ORCP 1 provides, in part:

"These rules govern procedure and practice in all circuit and district courts of this state, except in the small claims department of district courts, for all civil actions * * * *except where a different procedure is specified by statute or rule.*" (Emphasis supplied.)

## ORCP 27 provides, in part:

"B. When an incapacitated person, who has a conservator of such person's estate or a guardian, is a party to any action, the incapacitated person shall appear by the conservator or guardian as may be appropriate or, if the court so orders, by a guardian ad litem appointed by the court in which the action is brought. If the incapacitated person does not have a conservator of such person's estate or a guardian, the incapacitated person shall appear by a guardian ad litem appointed by the court. The court shall appoint some suitable person to act as guardian ad litem:

"B(1) When the incapacitated person is plaintiff, upon application of a relative or friend of the incapacitated person."

---

[1] At the time of trial, husband was under a conservatorship.

No statute or rule specifies a different procedure for dissolution actions. Wife argues that, if the legislature had intended that a guardian *ad litem* could maintain a dissolution action, ORS chapter 107 would include a special authorizing provision.[2] The rules, however, govern practice and procedure for all civil actions, except where otherwise specified.

■ Wife argues that, in any event, there should be special procedural safeguards, particularly as to proof, if a guardian *ad litem* seeks a dissolution on behalf of an incapacitated spouse; otherwise third persons could take advantage of either spouse. In the absence of legislation which mandates special procedures, we cannot require them. Moreover, the necessary proof of grounds for dissolution is the same, even if a spouse is incapacitated.

Wife also assigns as error that the court found that irreconcilable differences caused the irremediable breakdown of the marriage. *See* ORS 107.025(1). It found that

> "[husband] lucidly and seriously decided that he had irreconcilable differences with [wife] and that because of these differences his marriage to [her] had broken down."

It also found that husband did not change his mind later. It relied on the testimony of a social worker, a nephew and a friend of husband as to husband's comments about his wife and the marriage and husband's lucidity and seriousness when he made the comments. Wife argues that the evidence was not persuasive, because its sources were third parties who testified to statements of husband, who was incompetent, and that her testimony, as a competent spouse, should have been given more weight.

■ One spouse's view that irreconcilable differences have caused an irremediable breakdown of the marriage is sufficient to establish entitlement to a dissolution. *In re Dunn,* 13 Or App 497, 511 P2d 427 (1973). Testimony from third parties about husband's statements can also establish that irreconcilable differences and an irremedial breakdown of the marriage exist. Wife's testimony is not entitled to additional weight simply because husband is not now competent to

---

[2] *See, Annot.,* "Power of Incompetent Spouse's Guardian, Committee, or Next Friend to Sue for Granting or Vacation of Divorce or Annulment of Marriage, or to Make a Compromise or Settlement in Such Suit," 6 ALR 3d 681 (1966).

testify. The risk of bias of wife is at least as great as that of third parties. We defer to the trial court's view of the credibility of wife and the other witnesses and the weight to be given to the testimony of each of them. *McCoy and McCoy,* 28 Or App 919, 924, 562 P2d 207, *on reconsideration* 29 Or App 287 (1977). We agree that husband established that irreconcilable differences had caused the irremediable breakdown of the marriage.

Wife assigns as error that the court failed to divide the property on a just and equitable basis. ORS 107.105(1)(f).[3] She asserts that the judgment should not have awarded husband the mobile home, a recreational vehicle and the Crabapple Hill lot and ordered her to pay husband $29,764.00 and $2570.53, both sums with interest. She argues that the court failed to take into account the value of her services to husband and the income that she asserts she lost because she gave up her home care business to marry husband.

Before the marriage, wife operated the business in which she cared for three elderly persons, including her mother. The business had no assets. Her net income was approximately $1000 per month from the activity. She gave up the business when she married husband. Wife also owned an interest in a home, for which the record does not disclose a value, a car worth about $2000, some personal property and about $1,200 in cash. At the time of the marriage, husband owned assets worth over $100,000. `

After 31 months of marriage, husband entered a nursing home. The court found, and we agree, that during the marriage wife contributed $400 per month for 31 months as a homemaker; that husband supported wife and her mother at a higher standard of living than she had enjoyed before the marriage; that the only property that husband intended to transfer to wife was an amount to compensate her for her

---

[3] ORS 107.105(1)(f) provides, in part:

"[T]he division or other disposition between the parties of the real or personal property, or both, of either or both of the parties [is to be] just and proper in all the circumstances * * *. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

contribution as a homemaker; and that after husband had entered a nursing home, wife withdrew or disbursed $68,845.22 of his money. Of that sum, the record discloses that she spent $1500 for husband's benefit and loaned $29,764 to others without his consent.

This was a short-term marriage. The court should restore "the parties as nearly as possible [to] the financial position they would have held if no marriage had taken place." *York and York,* 30 Or App 937, 939, 569 P2d 32 (1977); *see also Miller and Miller,* 294 Or 660, 665, 661 P2d 1361 (1983). Although wife gave up her home care business, the court correctly found that, even without the funds which she took from husband without his consent or authorization, she still experienced a net financial gain as a result of the marriage. The judgment ordered her to repay less than half the amount of husband's funds that she withdrew without his consent. It more than adequately takes into account her contribution as a homemaker, ORS 107.105(1)(f), and any cost of nursing care that husband avoided before he entered the nursing home by reason of his marriage to wife. The court's division of the property is just and equitable.

Affirmed. Costs to husband.