803 P.2d 891

**CITY OF PRESCOTT, a municipal corporation, Plaintiff, Counterdefendant, Appellee, Cross–Appellant,**

v.

**TOWN OF CHINO VALLEY, a municipal corporation, Defendant, Counterclaimant, Appellant, Cross–Appellee.**

No. CV–90–0075–PR.

Supreme Court of Arizona,
En Banc.

Dec. 18, 1990.

Roderick G. McDougall, Phoenix City Atty., Larry F. Felix, Asst. Phoenix City Atty., Phoenix, and David R. Merkel, Tempe City Atty., Tempe, for City of Tempe and City of Phoenix, amici curiae.

Bryan, Cave, McPheeters & McRoberts by Kathleen Ferris, Phoenix, for Arizona Mun. Water Users Ass'n, amicus curiae.

## OPINION

GORDON, Chief Justice.

The City of Prescott (Prescott) petitioned for review of the court of appeals' decision upholding the validity of a transaction privilege tax imposed by the Town of Chino Valley (Chino Valley) on Prescott's operation of a water pipeline. We denied review on all issues raised in Prescott's petition for review.

Chino Valley filed a cross-petition for review raising several issues. We granted review on one of Chino Valley's issues to consider the court of appeals' conclusion that a city council may not meet in executive session with its attorney to discuss legislative matters. *See* Ariz.R.Civ.App.P. 23(f), 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and Ariz.R.Civ.App.P. 23, 17B A.R.S.

Lewis and Roca by Tom Galbraith, Susan M. Freeman, Patrick Derdenger, Gale L. Garriott and Janet Napolitano, Phoenix, for City of Prescott, plaintiff, counterdefendant, appellee and cross-appellant.

Stan A. Lehman, Prescott, Paul G. Ulrich, P.C. by Paul G. Ulrich, Phoenix, and Ajalat & Polley, P.C. by Charles R. Ajalat, Los Angeles, Cal., for Town of Chino Valley, defendant, counterclaimant, appellant and cross-appellee.

Brown & Bain by David J. Bodney, Daniel C. Barr and Michael W. Patten, Phoenix, for First Amendment Coalition of Arizona, amicus curiae.

## FACTUAL AND PROCEDURAL BACKGROUND [1]

In spring 1982, Chino Valley town council members began to consider enacting a transaction privilege tax to raise revenues for roads and other purposes. The issue was presented and discussed at public meetings on April 14, April 21, and April 28. On May 13, the town council voted at a public meeting to adopt a one percent "sales tax" and directed John Preston, the town attorney, to prepare an ordinance.

Arizona Department of Revenue representatives attended the public meeting on June 24, 1982, when the idea was advanced that the proposed tax should also apply to

1. This section will discuss only those facts relevant to the issue on which we granted review. Readers interested in details of the tax and the history of the litigation between Prescott and Chino Valley over Prescott's withdrawal of water from Chino Valley should consult the court of appeals' opinion. *See City of Prescott v. Town of Chino Valley,* 163 Ariz. 608, 790 P.2d 263 (App.1990).

Prescott's water pipeline. At some point, Preston indicated that drafting a tax ordinance that would effectively tax the pipeline was beyond his expertise. He recommended that the town retain Charles Ajalat, a California attorney specializing in municipal taxation. At an executive session in November, the town council authorized hiring Ajalat.

In November and December 1982 and January and February 1983, Preston brought questions and reports on the ordinance and the Prescott pipeline to executive sessions of the council. The public notices of these executive sessions did not refer to Prescott's pipeline; they merely stated the basis for the executive session as "for legal counsel." The subject of these executive sessions was whether Chino Valley could lawfully impose a transaction privilege tax upon the operation of Prescott's pipeline.

At a public meeting on May 26, 1983, there was a first public reading, by reference, of the proposed privilege tax ordinance. The second reading occurred at a public meeting on June 9. A public session exclusively on the proposed ordinance was held on June 21. The third reading and passage of the ordinance occurred at a public meeting on June 23.

Prescott refused to pay the tax, and initiated this litigation in 1985 seeking a declaratory judgment invalidating the tax. Chino Valley filed a counterclaim seeking adjudication of the tax's validity and collection of amounts owed. Following other procedural skirmishes set forth in the court of appeals' opinion, the trial court upheld the tax's validity.

On the open meeting law issue, the court of appeals concluded that "one or more of the executive sessions were improper." *City of Prescott v. Town of Chino Valley,* 163 Ariz. 608, 613, 790 P.2d 263, 268 (App. 1990). In reaching this conclusion, the court reasoned that:

> Notwithstanding the other enumerated occasions for an executive session with counsel, e.g., the "litigation exception" of § 38–431.03(A)(4), we agree with an interpretation by the Attorney General

that subsection (A)(3) is concerned with privileged or otherwise inherently confidential lawyer-client communications. *See Local Government Handbook,* published by the Attorney General (1988), § 4.5.5. Generally, executive sessions are permitted only when public discussion could harm the public's interest. *See People ex rel. Hopf v. Barger,* 30 Ill.App.3d 525, 536, 332 N.E.2d 649, 660 (1975), and *Mayor and Aldermen of City of Vicksburg v. Vicksburg Printing & Publishing Co.,* 434 So.2d 1333, 1339 (Miss.1983). Such is not the case where legal discussion is for legislative purposes. We cannot infer that a broad literal construction of § 38–431.03(A)(3) was intended, because if it were, it would have a clear tendency to thwart the explicit aims of the act.

*Id.* The court took "it as established for purposes of this case that the executive session consultations were a species of 'legal action.'" *Id.* at 614, 790 P.2d at 269. Despite finding that at least one of the executive sessions was improper, the court rejected Prescott's claim that the tax should be voided for open meeting law violations. It reasoned that "[i]f all of the 'legal action' at the executive sessions were nullified, the concededly proper and public enactment proceedings remain. We simply find no basis in § 38–431.05(A) for nullifying the enactment proceedings." *Id.*

## ISSUE

After considering Prescott's petition and Chino Valley's cross-petition, we granted review and ordered supplemental briefing on the following narrow issue:

> Is consultation between a governmental entity and its attorney "legal action" as defined in A.R.S. § 38–431 and thus the type of conduct that falls within the open meeting law? *See* Att'y Gen.Op. 75–8 and *Valencia v. Cota,* 126 Ariz. 555, 556–57, 617 P.2d 63, 64–65 (Ct.App.1980).

At issue are two competing public policies: the public's interest in the process of government and the need for confidential discussion or consultation for legal advice between a public body and its attorney.

*See Hokanson v. High School Dist. No. 8,* 121 Ariz. 264, 267–68, 589 P.2d 907, 910–11 (App.1978) ("The public's right to know and to participate in the decision-making process frequently comes into sharp conflict with the need for confidentiality in certain areas.").

## DISCUSSION

The "core" provision of the open meeting law is A.R.S. § 38–431.01(A), which provides that "[a]ll meetings of any public body shall be public meetings and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings." *Carefree Improvement Ass'n v. City of Scottsdale,* 133 Ariz. 106, 111, 649 P.2d 985, 990 (App.1982). In addition, the legislature has declared:

It is the public policy of this state, reflected in this article, that meetings of public bodies be conducted openly and that notices and agendas be provided for such meetings which contain such information as is reasonably necessary to inform the public of the matters to be discussed or decided. Toward this end, any person or entity charged with the interpretations of this article shall take into account the policy of this article and shall construe any provision of this article in favor of open and public meetings.

A.R.S. § 38–431.09.

Reading the above provisions in isolation would suggest that a town council may not meet in executive session with its attorney to discuss the legality of a proposed tax ordinance. However, we must read the open meeting statutes as a whole in order to arrive at the legislature's intent. *Karol v. Board of Educ. Trustees,* 122 Ariz. 95, 97, 593 P.2d 649, 651 (1979) (citing *City of Phoenix v. Kelly,* 90 Ariz. 116, 366 P.2d 470 (1961); *Powers v. Isley,* 66 Ariz. 94, 183 P.2d 880 (1947)); *see Gortarez v. Smitty's Super Valu, Inc.,* 140 Ariz. 97, 103, 680 P.2d 807, 813 (1984). A.R.S. § 38–431.03(A) provides seven specific ex-

ceptions to the general policy in favor of public meetings. This section is intended to "establish an equilibrium between the public's desire for access and the governmental agency's need to act in private, short of reaching 'a collective decision, commitment or promise.'" *Gipson v. Bean,* 156 Ariz. 478, 482, 753 P.2d 168, 172 (App.1987) (quoting *Hokanson,* 121 Ariz. at 268, 589 P.2d at 911). It provides in part:

A. Upon a public majority vote of the members constituting a quorum, a public body may hold an executive session but only for the following purposes:

. . . . .

3. *Discussion or consultation for legal advice with the attorney or attorneys of the public body.*

4. Discussion or consultation with the attorneys of the public body in order to consider its position and instruct its attorneys regarding the public body's position in pending or contemplated litigation.

. . . . .

A.R.S. § 38–431.03(A) (emphasis added). Thus, our legislature has provided a specific exemption from the public meeting requirement for a public body to meet with its attorney for legal advice.

 Despite this specific statutory authorization of an executive session for legal advice, the court of appeals concluded that such an executive session is improper. The court reasoned that the legal advice exception does not apply if the "legal discussion is for legislative purposes" because such "a broad literal construction of § 38–431.03(A)(3) ... would have a clear tendency to thwart the explicit aims of the act." *City of Prescott,* 163 Ariz. at 613, 790 P.2d at 268. Rather, the court would limit the legal advice exception to "privileged or otherwise inherently confidential lawyer-client communications." *Id.* (citing Office of the Attorney General, *Local Government Handbook* § 4.5.5 (1988)).[2]

---

2. The court of appeals cited no authority other than the Attorney General's *Local Government Handbook* to support these conclusions. We note that Attorney General's opinions are not

binding on this court. *See, e.g., Green v. Osborne,* 157 Ariz. 363, 365, 758 P.2d 138, 140 (1988); *Marston's, Inc. v. Roman Catholic Church of Phoenix,* 132 Ariz. 90, 94, 644 P.2d

Both parties and both amici contend that the court of appeals went too far in holding that an executive session to discuss the legality of proposed legislation constitutes legal action and does not fall within the legal advice exception to the public meeting requirement. We agree.

A.R.S. § 38–431(2) defines "legal action" as "a collective decision, commitment or promise made by a majority of the members of a public body pursuant to the constitution, their charter or bylaws or specified scope of appointment or authority, and the laws of this state." The Attorney General has stated:

> [I]t is our opinion that *all discussions, deliberations, considerations or consultations* among a majority of the members of a governing body regarding matters which may foreseeably require final action or a final decision of the governing body, *constitute "legal action"* and must be conducted in an open meeting, *unless an executive session is authorized.*

Op.Ariz.Att'y Gen. No. 75–8 (1975) (emphasis added). Thus, the Attorney General has recognized a broad definition of "legal action" that includes "all discussions, deliberations, considerations or consultations." The Attorney General also recognized, however, that these "discussions, deliberations, considerations or consultations" need not be conducted in an open meeting if an executive session is authorized. Likewise, our court of appeals has recognized that when deciding whether deliberations and discussions constitute "legal action," courts must distinguish between matters subject to being handled in executive session and those that are not. *Valencia v. Cota,* 126 Ariz. 555, 556, 617 P.2d 63, 64 (App.1980).

The court of appeals has stated that to apply the Attorney General's broad definition of "legal action" to matters that by statute may be discussed in executive session "would render the 'closed sessions' provisions of the statute nugatory. Obviously, if any meaningful action is going to be taken in the closed executive session, 'deliberations and discussions' must take place...." *Id.* at 557, 617 P.2d at 65.

We believe that § 38–431.03(A)(3) expressly authorizes executive session consultations between a public body and its attorney, and that these consultations therefore do not constitute "legal action" as that term is defined in A.R.S. § 38–431(2) and used in A.R.S. § 38–431.03(D).[3] A.R.S. § 38–431.03(D) provides that "[n]o executive session may be held for the purpose of taking any legal action involving a final vote or decision." Like the court of appeals in *Valencia,* we believe that § 38–431.03 would be an absurdity if we held that consultations between a public body and its attorney constitute "legal action involving a final vote or decision." The plain and unambiguous language of subsection (A)(3) would authorize an executive session for such consultations, but because these consultations would constitute "legal action involving a final vote or decision," subsection D would prohibit the executive session. Settled principles of statutory construction teach us to avoid such an absurd result. *See, e.g., Gortarez,* 140 Ariz. at 103, 680 P.2d at 813 (court will adopt interpretation of a statute that "is reasonable and avoids contradictions or absurdities"). Thus, we hold that consultation between a governmental entity and its attorney for legal advice is not "legal action involving a final vote or decision," and

244, 248 (1982). The handbook the court of appeals cited is no more binding upon us than is a formal Attorney General's opinion, especially when the handbook cited no authority for its conclusion that subsection (A)(3) is concerned with privileged or otherwise confidential communications.

**3.** Because the issue in this case involves the use of an executive session, we express no opinion for non-executive session cases on the Attorney General's conclusion that "all discussions, deliberations, considerations or consultations among

a majority of the members of a governing body regarding matters which may foreseeably require final action or a final decision of the governing body, constitute 'legal action' and must be conducted in open meeting...." *See* Op.Ariz.Att'y Gen. No. 75–8 (1975). We do note, however, that the court of appeals has approved of this definition of "legal action" for matters that cannot be discussed in executive session. *See Valencia,* 126 Ariz. at 556–57, 617 P.2d at 64–65.

that a governmental entity may therefore meet in executive session with its attorney to receive legal advice.

■ Although Prescott agrees with Chino Valley that public bodies should be able to consult with their attorneys in executive session about the legality of proposed legislation, Prescott argues that the mere presence of an attorney at an executive session cannot be used to circumvent the open meeting law requirements. We agree that the mere presence of an attorney at an executive session cannot be used to circumvent the open meeting law requirements. *See Register Div. of Freedom Newspapers, Inc. v. County of Orange,* 158 Cal.App.3d 893, 907, 205 Cal.Rptr. 92, 101 (1984) ("the mere presence of county counsel at a meeting will *not* turn deliberations regarding the settlement of a tort claim into 'confidential' attorney-client communications"); *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors,* 263 Cal.App.2d 41, 58, 69 Cal.Rptr. 480, 492 (1968) ("Neither the attorney's presence nor the happenstance of some kind of lawsuit may serve as the pretext for secret consultations whose revelation will not injure the public interest."); *Jefferson County Bd. of Educ. v. Courier–Journal,* 551 S.W.2d 25, 28 (Ky.App.1977) ("nothing said herein should be construed as to mean that anytime the public agency has its attorney present that it can go into closed session").

■ A.R.S. § 38–431.03(A)(3) authorizes an executive session when the following three requirements are met: (1) there is a discussion or consultation (2) for legal advice (3) with the attorney or attorneys of the public body. The second requirement is the one that restricts the use of executive sessions and prevents public bodies from using executive sessions to circumvent the open meeting law's requirements. A public body may not hold an executive session merely because its attorney is present if the discussion is not for legal advice.

We believe a public body may provide its attorney with facts and information regarding proposed legislation, and the attorney may advise the public body regarding the legal ramifications of the facts and information given to him and the legality of the proposed legislation. *See Smith County Educ. Ass'n v. Anderson,* 676 S.W.2d 328, 334 (Tenn.1984) (adopting similar standard while limiting the legal advice exception to Tennessee's Open Meetings Act to discussion of present and pending litigation). Members of the public body also may question the attorney about the proposed legislation in order to obtain thorough and complete legal advice. In short, members of a public body may meet in executive session for discussion with attorneys regarding the legal propriety, phrasing, drafting, and validity of proposed legislation, including its meanings, legal scope, possible legal challenges, and counsels' views regarding constitutionality, construction, and the like. However, once the members of the public body commence any discussion regarding the merits of enacting the legislation or what action to take based upon the attorney's advice, the discussion moves beyond the realm of legal advice and must be open to the public. *See id.*

■ Prescott argues that Chino Valley did not make legitimate use of an executive session for legal advice, but rather took improper actions. Prescott contends that Chino Valley used the presence of its attorney as a "subterfuge" to discuss secretly the plan to tax Prescott, that there was no public discussion of the council's plan to tax pipelines or Prescott, that the town council reached a consensus in executive session, and that Chino Valley has been guilty of "devious manipulations" with respect to the legal advice exception to the open meeting laws. Prescott raised similar arguments in its petition for review. We need not discuss these contentions in detail because they are outside the scope of the narrow issue on which we granted review. *See* Ariz.R.Civ.App.P. 23(f), 17B A.R.S. We merely note that the trial court, after hearing numerous witnesses at a full evidentiary trial, made extensive factual find-

486

ings and concluded that Prescott did not meet its burden of proving that unlawful discussions took place.[4] We will not set aside these findings unless clearly erroneous, and we give due weight to the trial judge's opportunity to assess the credibility of witnesses. *State ex rel. LaSota v. Arizona Licensed Beverage Ass'n*, 128 Ariz. 515, 519, 627 P.2d 666, 670 (1981); *United Bank v. Mesa N.O. Nelson Co.*, 121 Ariz. 438, 441, 590 P.2d 1384, 1387 (1979); Ariz. R.Civ.P. 52(a), 16 A.R.S. We find nothing in this record to indicate that the trial judge's determination was clearly erroneous. Thus, we conclude that Chino Valley's enactment of the tax at issue is not invalid as violating the open meeting law.

## CONCLUSION

In summary, we hold that consultation between a governmental entity and its attorney for legal advice is not "legal action involving a final vote or decision," and that a governmental entity may therefore meet in executive session with its attorney to receive legal advice. However, once members of the public body commence any discussion regarding the merits of enacting the legislation or what action to take based upon the attorney's advice, the discussion moves beyond the realm of legal advice and must be open to the public.

**4.** The trial court, in determining that Prescott did not meet its burden of proving that unlawful discussions took place, was referring to discussions generally and not to the executive sessions at issue in our review of this case. We agree with the trial court that the burden of proving a violation of the open meeting law generally is on the party asserting the violation.

We do not mean to imply, however, that the party challenging an *executive session* has the burden of proving that an improper discussion took place at the closed meeting. To the contrary, we believe that the public body has the burden of proving that its actions fall within an executive session exception to the open meeting law. *See Common Council v. Peru Daily Tribune, Inc.*, 440 N.E.2d 726, 729 (Ind.App.1982) (stating in discussion of open meeting law that "exceptions to a statute and its operation should be strictly construed by placing the burden of proving the exception upon the party claiming it"); *News & Observer Publishing Co. v. Interim Bd. of Educ.*, 29 N.C.App. 37, 47, 223 S.E.2d 580, 586–87 (1976) (exceptions to open meeting law

We affirm the decisions of the trial court and the court of appeals that Chino Valley's transaction privilege tax is not null and void for violating the open meeting law. However, we vacate those portions of the court of appeals' opinion that are inconsistent with our discussion of the open meeting law issue.

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.

should be strictly construed and "those seeking to come within the exceptions should have the burden of justifying their action"); *cf. News–Journal Co. v. McLaughlin*, 377 A.2d 358, 362 (Del.Ch.1977) ("If the Delaware [open meeting] statute is to be liberally construed in favor of the citizens of the State ... then the burden should not be cast upon one asserting a violation of it to establish what the public body actually did and said at a meeting from which he was excluded in order to obtain relief."); A.R.S. § 38–431.09 ("any person or entity charged with the interpretations of [the open meeting law] shall take into account the policy of [the open meeting law] and shall construe any provision in favor of open and public meetings"). Although neither the parties, the trial court, nor the court of appeals addressed the burden of proof in relation to executive sessions, the record in this case convinces us that Chino Valley easily would have met its burden of proving that the executive sessions at issue here fall within the legal advice exception to the open meeting law.