850 P.2d 674

**In re the Marriage of: Peggy RUVALCABA, By and Through her temporary guardian, Betty STUBBLEFIELD, Petitioner–Appellant,**

v.

**Francisco RUVALCABA, Respondent–Appellee.**

**No. 1 CA–CV 90–400.**

Court of Appeals of Arizona, Division 1, Department E.

April 8, 1993.

Law Offices of Keith S. Knochel by Micheel J. Hildebrand, Bullhead City, for petitioner-appellant.

Community Legal Services by Sharon Sergent, Phoenix, for respondent-appellee.

## OPINION

GRANT, Judge.

This is an appeal from the dismissal by the trial court of a Petition for Dissolution of Marriage filed by a Guardian on behalf of her incompetent adult daughter. We must decide as an issue of first impression whether a guardian can petition for dissolution of marriage on behalf of an incompetent adult ward. We answer the question raised by this appeal in the affirmative for the reasons set forth in this opinion.

### FACTS

Peggy and Francisco Ruvalcaba were married on May 26, 1979, in Las Vegas, Nevada. Mr. Ruvalcaba ("husband") is a Mexican national. The couple has one child, Cruz Albert Ruvalcaba, born on May 3, 1984. The Ruvalcabas resided together as husband and wife until February 25, 1989, when Mrs. Ruvalcaba fell from a horse and suffered a severe traumatic head injury resulting in a coma and requiring several months of hospitalization.

Although Mrs. Ruvalcaba ultimately emerged from the coma, throughout the trial proceedings she continued to suffer periods of selective amnesia as well as mental and physical impairments so that the trial court determined that she is an incapacitated person as defined under Ariz. Rev.Stat.Ann. ("A.R.S.") section 14–5101. A neuro-psychological evaluation of Mrs. Ruvalcaba's condition dated April 24, 1990, reported that it was unlikely that she would be capable of testifying for any time from six months to a year and that further evaluation would be necessary to determine if she would ever regain sufficient cognitive functioning to be able to testify on her own behalf. Therefore, for the purpose of the proceedings below, the trial judge determined her to be an unavailable witness as the term is used in Rule 804(a)(4) of the Arizona Rules of Evidence.

Betty Stubblefield ("guardian"), Mrs. Ruvalcaba's mother, was appointed her daughter's temporary guardian in July of 1989 and her permanent guardian in August of 1989.

On August 16, 1989, while her daughter was still in the hospital, Stubblefield, acting in her capacity as temporary guardian under A.R.S. section 14–5312, filed a Petition for Dissolution of Marriage on her daughter's behalf. The petition alleged that the Ruvalcabas's marriage was "irretrievably broken" for purposes of A.R.S. section 25–312(3), that no possibility of reconciliation existed and that the conciliation provisions of A.R.S. section 25–381.09 did not apply. The petition also requested custody of the couple's minor son and child support. On that same date, the guardian also filed a Motion to Show Cause/Temporary Restraining Order against the husband, alleging that the husband had physically abused Mrs. Ruvalcaba on several occasions, threatened harm to her guardian, in the event that Mrs. Ruvalcaba pursued a divorce, and threatened to flee to Mexico with the son. A temporary restraining order was granted by the court. Following a Show Cause Hearing, the court awarded "temporary care, custody and control" of the couple's son to Mrs. Ruvalcaba, "acting by and through her Guardian," subject to reasonable visitation rights to the husband.

In September and October 1990, the husband filed a Motion to Dismiss, which was denied by the trial court, and a Response to the Petition for Dissolution. In the Response, the husband argued, among other things, (1) that only a party to a marriage may file for dissolution under A.R.S. section 25–314(B) and (2) that, in any case, his marriage was not "irretrievably broken" pursuant to A.R.S. section 25–312(3), nor

did he wish to dissolve it. While admitting to certain incidents of physical abuse of his wife occasioned by his drinking problem, the husband maintained that he loved his son and wife and hoped they might be reunited in the future as a family. A Home Study and Custody Evaluation ordered by the court confirmed that the husband and his son had good rapport.

In April of 1990, the guardian petitioned the court for (1) appointment as her daughter's guardian pursuant to Arizona Rules of Civil Procedure 17(g), for the limited purpose of acting on her behalf in the dissolution proceedings, and (2) for permission to testify concerning the status of her ward's marital relationship. The husband opposed both motions and petitioned the court to be appointed his wife's "Rule 17" guardian.

In an Order filed on May 31, 1990, dismissing this action, the trial judge concluded that "the Guardian *Ad Litem*, Betty Stubblefield, does not have the right to bring a dissolution action pursuant to A.R.S. section 14–5312."

At the same time, the court vacated its order granting temporary custody of the couple's son to Mrs. Ruvalcaba.

From the trial court's order of May 31, 1990, the guardian appeals on behalf of her ward, Mrs. Ruvalcaba.

### ISSUES

This appeal presents a question of first impression in Arizona: whether a guardian may petition on behalf of an incompetent ward for dissolution of the ward's marriage. Two questions must be considered: (1) Does a court-appointed guardian possess the legal authority to petition for the dissolution of marriage on behalf of an incompetent adult ward? (2) May a guardian testify as to prior conversations and desires regarding the marriage expressed by her ward prior to becoming incompetent?

The guardian also raises the issue of whether denying incompetents the right to initiate dissolution proceedings through their guardians deprives them of a fundamental constitutional right. Because we find that incompetents are not barred by the statutes from seeking dissolution through their guardians, we do not reach this constitutional issue.

### DISCUSSION

In Arizona, actions to dissolve marriage are governed by Title 25, Chapter 3, art. 2—*Dissolution of Marriage*, A.R.S. sections 25–311 *et seq.* (West 1991 & Supp. 1992) enacted by the legislature in 1973. To initiate a proceeding for dissolution of marriage pursuant to A.R.S. section 25–314(A), a "verified petition" must be filed in superior court alleging that a marriage "is irretrievably broken." Pursuant to A.R.S. section 25–314(B) "[e]ither party to a marriage may initiate the proceeding."

The general powers and duties of a guardian with respect to a ward are contained in A.R.S. section 14–5312(A), which provides that "[a] guardian of an incapacitated person has the same powers, rights and duties respecting his ward that a parent has respecting his unemancipated minor child." In addition, Rule 17(g), Arizona Rules of Civil Procedure, provides that "[w]henever an infant or incompetent person has a representative, such as a general guardian, or similar fiduciary, the representative may sue or defend on behalf of the infant or incompetent person."

Husband contends that, in adopting the language of A.R.S. section 25–314(B), the legislature intended to reserve the power to dissolve a marriage exclusively to the parties to that marriage. Had the legislature intended to provide for action by a guardian or third party, husband argues, the legislature would have expressly provided for this in that statute. According to husband, in adopting the language of A.R.S. section 25–314(B), the legislature intended to incorporate the view, held by the majority of jurisdictions, that the right to dissolve a marriage is so personal to the parties to that marriage that it may not be invoked by a third party. Husband therefore contends that any attempt by his wife's guardian to maintain an action for dissolution of their marriage under the general powers

granted a guardian pursuant to A.R.S. section 14–5312 and Rule 17(g) is precluded by the language of A.R.S. section 25–314(B) reserving the right of dissolution exclusively to the parties to the marriage.

Guardian maintains that the "majority view" of dissolution actions that husband urges this court to espouse is found in "old cases," decided prior to the advent of the concept of "no-fault divorce." Guardian contends that that view is no longer viable in light of the precepts of modern divorce law. She draws our attention to the fact that, in more recent years, several states have permitted dissolution sought by a guardian acting under the guardian's general authority to take legal action on behalf of an incompetent adult ward. Consequently, guardian argues, she should not be precluded from maintaining a dissolution action on behalf of her ward. Guardian argues further that the general right to "sue or defend" on behalf of an incompetent ward contained in Rule 17(g) of the Arizona Rules of Civil Procedure clearly encompasses the power to file a petition for dissolution of a marriage on behalf of a ward.

### Guardianship Provisions

■ In A.R.S. section 14–5312(A), the legislature conveyed to guardians "the same powers, rights and duties that a parent has with respect to an unemancipated minor child." The trial court found that this language precluded guardian in this case from bringing an action for dissolution on behalf of her incapacitated adult ward. It reasoned as follows:

> The legislature in enacting A.R.S. section 14–5312 setting forth the powers of a guardian said that the powers—the guardian has the same powers, rights and duties regarding his ward that a parent has respecting his unemancipated minor child except there is no liability. Well, a parent has no authority to bring an action for divorce on behalf of [the] unemancipated minor child because if the child is validly married, the child is no longer an unemancipated minor, so therefore reading the statute, 14–5312, I do not believe that a guardian has the right

to bring an action on behalf of an incapacitated ward for dissolution of marriage.

Guardian contends that the trial court reads the statute too narrowly. We agree.

We believe the legislature intended, by the language of A.R.S. section 14–5312, to invest legal guardians with broad authority. The statutory language equating guardians' authority to act on behalf of their wards to parents' broad authority to act on behalf of children was intended to convey .the general breadth of a legal guardian's powers, not to precisely define the outer limits of those powers. Furthermore, Rule 17(g) specifically states that a guardian "may sue or defend on behalf of ... the incompetent person" without limitation on the type of case. Consequently, we find nothing in the language of A.R.S. section 14–5312(A) or Rule 17(g) of the Arizona Rules of Civil Procedure that precludes a guardian from maintaining an action for dissolution on behalf of an incapacitated adult ward.

### Divorce Provisions

■ We therefore turn to a consideration of A.R.S. section 25–314(B) to determine whether that statute precludes a guardian from asserting an incompetent adult ward's right to divorce.

First, we address husband's argument that, by adopting the language of A.R.S. section 25–314(B), the legislature intended to reserve the power to dissolve a marriage "exclusively" to the parties to the marriage. Husband maintains that, had the legislature intended to provide for action by a third party, it would have done so expressly in the statute. The converse argument may also be made that, had the legislature intended to prohibit action by third persons on behalf of a spouse, it would have expressly said so in the language of A.R.S. section 25–314. Nothing in the current language of A.R.S. section 25–314(B) expressly prohibits third persons from filing a petition for dissolution on behalf of a party to a marriage. Moreover, as noted above, the legislature did provide

for incapacitated parties to continue to invoke their rights through third persons under the general powers granted guardians pursuant to A.R.S. section 14–5312. Consequently we find that A.R.S. section 25–314 does not, in and of itself, bar the action in this case.

█ We therefore address husband's next argument that this court should continue to adhere to the view of dissolution as personal to the parties to the marriage.

The husband's view of divorce as a right that is strictly personal to the parties to a marriage is summarized in 6 A.L.R.3d *Divorce–Annulment–Guardian's Power* 681, 683 (1966):

> Although there are statutes in practically every jurisdiction giving a guardian, committee, or next friend general authority to maintain actions on behalf of an incompetent, it is generally held that these statutes do not apply to divorce actions unless the statute expressly so states, and that therefore a suit for divorce cannot be brought on behalf of a mentally incompetent spouse by a guardian, committee or next friend.... The basis for the rule appears to be the belief that there are no marital offenses which of themselves work a dissolution of the marital relation, and the right of the injured party to regard the bond of marriage as indissoluble because of religious affiliation or for other reasons is considered so strictly personal that such relation should not be dissolved except with the personal consent of the injured person, which cannot be given where he or she is insane. Some courts apparently view this right as so personal that it cannot be invoked even in order to protect the insane person against the most ruinous economic consequences of a maintenance of the marital bond.

As husband notes, this is clearly the view held by the majority of jurisdictions that have considered the question of whether a guardian may bring a divorce action on behalf of an incompetent ward. *See, e.g., Wood v. Beard,* 107 So.2d 198 (Fla.Dist.Ct. App.1958) (incompetent who expressed consent to divorce by instituting action prior to adjudication of mental incompetency, lacks the will to proceed with or desist from divorce action instituted or to exercise the right of condonation; guardian has no power to prosecute divorce action for him); *Shenk v. Shenk,* 100 Ohio App. 32, 135 N.E.2d 436 (1954) (valid petition for divorce cannot be filed for an insane or incompetent spouse by a next friend or guardian because in such instance the will would be that of the next friend or guardian and not of the real party in interest); *Higginbotham v. Higginbotham,* 146 S.W.2d 856 (Mo.Ct.App.1940) (statutory requirement that petition for divorce must be accompanied by affidavit of plaintiff that facts stated therein were true to his best knowledge and belief prohibits maintenance of a suit for divorce at the discretion of the guardian of an insane spouse).

However, it is also true, as guardian notes, that in more recent years some jurisdictions have digressed from that view, increasingly permitting the pursuit of dissolution by the guardian of an incompetent adult ward. *See, e.g., Wahlenmaier v. Wahlenmaier,* 762 S.W.2d 575 (Tex.1988); *Ballard and Ballard,* Or.App. 463, 762 P.2d 1051 (1988); *Matter of Parmer,* 755 S.W.2d 5 (Mo.App.1988); *Boyd v. Edwards,* 4 Ohio App.3d 142, 446 N.E.2d 1151 (1982); *In re Marriage of Gannon,* 104 Wash.2d 121, 702 P.2d 465 (1985); *Payton v. Payne,* 90 Ill.App.3d 892, 46 Ill.Dec. 311, 414 N.E.2d 33 (1980); *Knight v. Radomski,* 414 A.2d 1211 (Me.1980), *cert. denied,* 449 U.S. 953, 101 S.Ct. 359, 66 L.Ed.2d 218 (1980); *In re Marriage of Higgason,* 10 Cal.3d 476, 110 Cal.Rptr. 897, 516 P.2d 289 (1973).

We find the reasoning of the *Ballard* and *Gannon* courts particularly helpful to our consideration of the issues in this case.

In *Ballard and Ballard,* an 85–year–old husband filed an action for divorce in January of 1986. In March of 1986, his attorney applied for appointment as guardian *ad litem* on the ground that the husband was incapable of proceeding without assistance. The wife moved to dismiss the action on the ground that the husband was mentally incompetent. The trial court found that the husband was indeed incompetent.

However, the court did not dismiss the action, holding that the guardian *ad litem* could pursue dissolution on the husband's behalf under two Oregon rules, ORCP 27B and ORCP 1, which provide:

*ORCP 27B*

When an incapacitated person, who has a conservator of such person's estate or a guardian, is a party to any action, the incapacitated person shall appear by the conservator or guardian as may be appropriate, or, if the court so orders, by a guardian ad litem appointed by the court in which the action is brought. If the incapacitated person does not have a conservator of such person's estate or a guardian, the incapacitated person shall appear by a guardian ad litem appointed by the court. The court shall appoint some suitable person to act as guardian ad litem.

*ORCP 1*

These rules govern procedure and practice in all circuit and district courts of this state, except in the small claims department of district courts, for all civil actions ... *except where a different procedure is specified by statute or rule.* (Emphasis supplied.)

762 P.2d at 1052 (quoting the Oregon statutes).

The wife in *Ballard* argued that, "if the [Oregon] legislature had intended that a guardian *ad litem* could maintain a dissolution action, ORS chapter 107 [divorce statute] would include a special authorizing provision." *Id.* However, the Oregon Court of Appeals upheld the trial court's finding, concluding simply that the "rules govern practice and procedure for all civil actions, except where otherwise specified;" and that since no statute or rule specified a different procedure for dissolution, the action could be maintained by the guardian. *Id.* The wife further argued that "there should be special procedural safeguards, particularly as to proof, if a guardian *ad litem* seeks a dissolution on behalf of an incapacitated spouse; otherwise third persons could take advantage of either spouse." *Id.* The court of appeals, however, held that it could not require special

procedures where the legislation did not mandate them. *Id.* The court of appeals further concluded that one spouse's view that irreconcilable differences caused the irremediable breakdown of the marriage was sufficient to establish entitlement to dissolution and that the testimony of third parties of the incompetent spouse's statements could establish the irreconcilable differences and irremediable breakdown of the marriage. 762 P.2d at 1053.

In *In re Marriage of Gannon,* the Supreme Court of Washington was faced with similar issues and resolved them in a similar fashion. *Gannon* involved an action brought by an 84–year–old wife for an order for separate maintenance from her husband, which, at the same time, specifically alleged that her marriage was not "irretrievably broken." A guardian *ad litem* was appointed to represent the 89–year–old incompetent husband in the action. The guardian counter-petitioned on behalf of the husband for dissolution of the marriage. In so doing, the guardian relied on a Washington statute generally authorizing a guardian to commence and prosecute any suit on behalf of the incompetent. 702 P.2d at 467.

The trial court in *Gannon* dismissed the actions of both parties, holding that (1) the trial court had no subject matter jurisdiction to award maintenance absent a concomitant action for dissolution, and (2) the guardian *ad litem* had no standing to seek a dissolution on behalf of a legally incompetent husband. On review, the Supreme Court of Washington remanded the case to the trial court, holding that a guardian for an incompetent adult ward had the authority to petition for dissolution of the ward's marriage if the guardian or guardian *ad litem* believed a dissolution to be in the best interests of the incompetent ward. 702 P.2d at 467. Acknowledging the view of dissolution proceedings as personal to the parties to the marriage, the Washington Supreme Court reasoned as follows:

... The vast majority of courts hold that a guardian has no authority to seek divorce or dissolution. The cases are collected in Annot., 6 A.L.R.3d 681, 683–88

(1966). The collected cases rely upon the truism that a decision to dissolve a marriage is so personal that a guardian should not be empowered to make such a choice for the incompetent. As a general proposition that rationale is valid. However, in these days of termination of life support, tax consequences of virtually all economic decisions, no-fault dissolutions and the other vagaries of a vastly changing society, we think an absolute rule denying authority is not justified nor in the public interest....

Generally, a guardian should not determine this question for the incompetent. However, there may be circumstances in which a court may authorize a general guardian or a [guardian *ad litem*] to seek a dissolution. Unless this course of action is available, the competent party is vested with absolute, final control over the marriage. This is not equitable.

*Id.*

We are persuaded by the reasoning of more recent cases that a guardian may maintain an action for dissolution of marriage on behalf of an incompetent adult ward. We find the *Gannon* court's concern for the inequity that is created by leaving an incompetent spouse captive to the whims of the competent spouse, and the specter of potential for abuse that that scenario raises, particularly compelling. We share the *Gannon* court's view that, in this day and age, when guardians are permitted to refuse medical care on behalf of their incompetent wards—surely a decision that is extremely "personal" to that individual—prohibiting that same guardian from maintaining an action for dissolution on behalf of the ward cannot be justified. In this regard, we find *Rasmussen v. Fleming*, 154 Ariz. 207, 741 P.2d 674 (1987), the Arizona case that established a legal guardian's authority to determine whether to continue medical treatment for an incompetent adult ward, of assistance to our resolution of the issues in this case.

In *Rasmussen*, the Arizona Supreme Court found that an incompetent's right to refuse medical treatment still existed despite her incompetency. 154 Ariz. at 219,

741 P.2d at 686. In arriving at its conclusion, our supreme court relied on a New York case, *Eichner v. Dillon*, 73 A.D.2d 431, 426 N.Y.S.2d 517 (1980), in which the New York Supreme Court stated:

... [B]y the standards of logic, morality and medicine, the terminally ill should be treated equally, whether competent or incompetent. Can it be doubted that the "value of human dignity extends to both?" What possible societal policy objective is vindicated or furthered by treating the two groups differently.

154 Ariz. at 219, 741 P.2d at 686.

 If an incompetent's right to refuse medical treatment is not expunged by physical or mental impairment, surely an incompetent's right to petition for dissolution of marriage is similarly not destroyed by physical or mental incapacity. Since we cannot find any justification for treating competent and incompetent spouses differently, we hold that a spouse who has been adjudged to be "incapacitated" under A.R.S. section 14–5101 retains the means to dissolve his or her marriage under A.R.S. section 25–314. We further hold that, when a spouse is unable, because of incapacity, to assert his or her right to petition for dissolution under A.R.S. section 25–314, the spouse's guardian may assert that means of terminating the marriage on behalf of the ward in accordance with A.R.S. section 14–5312 and Rule 17(g) of the Arizona Rules of Civil Procedure.

We share the *Gannon* court's concern that, unless dissolution remains available to an incapacitated spouse, "the competent party is vested with absolute, final control over the marriage," thereby creating a situation that "is not equitable." 702 P.2d at 467. Such a situation not only is inequitable, but also threatens to leave an incompetent spouse without adequate legal recourse against potential physical, emotional or financial abuse by the competent spouse. We believe that to hold an incompetent spouse a prisoner to physical or emotional abuse at the hands of a competent spouse by means of the bands of matrimony is untenable. Thus, the guardian may proceed after concluding that this is what the

ward would want, basing that conclusion on what is known of the ward's preferences and the ward's general values regarding marriage and divorce and overall manner of living.

Deciding, as we do, that a guardian may initiate dissolution proceedings on behalf of an incompetent ward, we turn next to the question of the appropriate evidentiary basis for determining if dissolution is warranted. This includes the determination of whether third parties, including the guardian, may testify as to the irretrievable breakdown of the marriage in question. Guardian in the present case argues that she should be permitted to testify about her daughter's wishes expressed prior to her incapacitation. She relies on *Rasmussen*, which permitted the testimony of third parties as to an incompetent's wishes regarding medical treatment, as authority for her proposition. 154 Ariz. at 221 n. 21, 741 P.2d at 688 n. 21. As noted above, since we find the considerations in *Rasmussen* applicable to this case, we return to that decision for further guidance.

In *Rasmussen*, our supreme court found that courts had developed two standards to guide surrogate decision making: "substituted judgment" and "best interests." 154 Ariz at 221, 741 P.2d at 688. Our supreme court held that the preferable standard for judging an incompetent's desires regarding medical treatment was the "substituted judgment" standard, when the incompetent patient had manifested his or her intent while competent. *Id.* According to our supreme court in *Rasmussen*, under either standard, a guardian *ad litem*'s principal substantive duty is to discover all facts relevant to medical treatment of the patient and to report such facts to the court, including such things as attitude and prior statements of the incompetent concerning life sustaining treatment and third party perceptions of the incompetent's wishes. 154 Ariz. at 223, 741 P.2d at 690. We do not decide here whether a "best interest" test is appropriate to a dissolution action initiated by a guardian.

In this case, there appears to be evidence of the incompetent ward's desires when competent regarding dissolution. In accordance with *Rasmussen*, we therefore find that the "substituted judgment" standard is the appropriate standard to be applied by a trial court in determining whether a ward desires to dissolve her marriage in cases, such as this one, where evidence of the ward's desires when competent exists. Thus, in determining whether to grant the divorce, a trial court may consider any otherwise admissible evidence manifesting the incompetent's own desires while competent to terminate the marriage. Such evidence may include written manifestations of the incompetent's intent (such as a petition for dissolution signed by the incompetent prior to incapacity), as well as any statements made to third parties, such as the guardian, family members or friends, while competent.

Statements made by the incompetent spouse during competency to third parties must of necessity reach the court via the testimony of the third parties themselves and may be considered by the trial court pursuant to the exception to the hearsay rules. *See* Arizona Rules of Evidence ("Ariz.R.Evid."), 804(b)(5), 803(24), and 602. Husband argues that the exceptions to the hearsay rules require guarantees of the trustworthiness of the hearsay admissions that may not be present when a guardian seeks dissolution on behalf of a ward because the guardian possesses insufficient knowledge of the relationship between the parties to establish the "irretrievable breakdown" required to dissolve the marriage under A.R.S. section 25–312 or because a guardian may have ulterior motives for seeking dissolution. We agree. However, we also agree with the *Ballard* court that a competent spouse's testimony is not automatically rendered trustworthy or entitled to greater weight by mere virtue of the fact that the other spouse has been rendered incapacitated and consequently unable to testify on his or her own.

Testimony from third parties about [the incompetent's] statements can also establish that irreconcilable differences and an irremediable breakdown of the marriage exists. [The competent spouse's] testi-

mony is not entitled to additional weight simply because [the incompetent spouse] is not now competent to testify. The risk of bias of [the competent spouse] is at least as great as that of third parties. We defer to the trial court's view of the credibility of [the competent spouse] and the other witnesses and the weight to be given to the testimony of each of them. 762 P.2d at 1053. We agree with the *Ballard* court that in such cases we must rely on the trial court's ability to evaluate the credibility of the witnesses and to determine the admissibility of each witness's testimony and accord it its appropriate weight. *City of Prescott v. Town of Chino Valley*, 166 Ariz. 480, 486, 803 P.2d 891, 897 (1990). As guardian points out, and husband does not deny, under A.R.S. section 25–314(A) one spouse's contention that a marriage is "irretrievably broken" is sufficient to establish the breakdown of that marriage and to initiate proceedings for dissolution. Consequently, we conclude that testimony from third parties, including an incompetent ward's guardian, about the incompetent's pre-incapacitation comments on the state of his or her marriage may be used to establish the irretrievable breakdown of the marriage.

■ We therefore hold that Mrs. Ruvalcaba's guardian in this case, as well as others with knowledge, may testify as to statements Mrs. Ruvalcaba made to them about the state of her marriage prior to her incapacitation, including statements, if any, regarding her desires to end the marriage. The trial court must then determine the credibility to be afforded this testimony as well as all other testimony.

Husband argues that a guardian's testimony as to the status of the incompetent's marriage should be inadmissible in dissolution proceedings because it might be colored by "ulterior motives." We find this argument applies equally to the testimony of the competent spouse. There are several possible reasons why a competent spouse might find it desirable to continue to assert the viability of a marriage even after that marriage is no longer truly viable. Two that come readily to mind are financial advantage and the need of the competent spouse to maintain a marriage for purposes of retaining immigration status. This "ulterior motive" argument is not sufficient reason to bar the guardian's testimony in this case, just as it would not be sufficient reason to bar the competent spouse's testimony.

We agree with guardian that she should have been permitted to present evidence of material facts concerning the irretrievable breakdown of her ward's marriage, including evidence of statements made by her ward prior to being adjudicated incompetent. The trial court must determine the probative value and trustworthiness of any such evidence presented, in accordance with Rule 804(b)(5) of the Arizona Rules of Evidence.

■ We also find *Rasmussen* dispositive on the question of the burden of proof to be applied by the trial court in cases, such as this one, in which the dissolution of the marriage is disputed. In *Rasmussen,* the supreme court found that, although the typical evidentiary standard in civil cases is a "preponderance of the evidence," a "clear and convincing" standard is necessary in cases involving a decision to continue or terminate medical treatment for incompetents. 154 Ariz. at 224, 741 P.2d at 691. According to our supreme court, this standard is necessary because such cases present "matters that in at least some instances raise life-or-death issues and in all instances involve personal interests more important than those found in the typical civil dispute." *Id.* Cases involving the dissolution of an incompetent spouse's marriage likewise present issues involving personal interests more complex and important than those typically presented in a civil lawsuit. Thus we find that when a trial court is required to resolve disputed cases such as this one, "clear and convincing" evidence is similarly required to resolve the dispute.

### CONCLUSION

To deny incapacitated spouses the means to withdraw from abusive, or merely extinguished marriages, by leaving them captive to the representations of their competent

spouses is, at best, to deprive them of their dignity and, at worst, to potentially condemn them to exploitation, physical injury and, possibly even death at the hands of the competent spouse. This is a result that a system of justice should not and cannot sanction.

We find nothing in A.R.S. section 25–314 which expressly prohibits a guardian *ad litem* from filing and pursuing an action for dissolution of marriage on behalf of an incompetent adult ward. Furthermore, we find that such an action may be brought by the guardian pursuant to the guardian's general powers to act on behalf of an incompetent ward under A.R.S. section 14–5312(A) and Rule 17(g), Arizona Rules of Civil Procedure. We therefore reverse and remand with directions to the trial court to vacate its order of dismissal and to reinstate the Petition for Dissolution of Marriage filed on behalf of and/or for appellant Peggy Ruvalcaba by her guardian and to proceed in a manner not inconsistent with this opinion.

McGREGOR, J., concurs.

FIDEL, Judge, specially concurring:

I concur in the conclusion of the majority. I write to state my separate rationale.

First, I do not believe that our decision is supported by Arizona's marital and domestic relations laws. One cannot attribute to the legislature that adopted the marital dissolution provisions of A.R.S. Title 25 the intent either to permit or to forbid guardians to sue for dissolution on behalf of incapacitated wards. Rather, it appears from reading the dissolution statutes that the legislature did not contemplate that subject at all.

In Title 14, however, the legislature defined guardianship powers broadly with the evident intent to give guardians the flexibility to assert whatever legal interests their wards cannot assert for themselves. In A.R.S. section 14–5312(A), the legislature enumerated among a guardian's specific powers: to take physical custody of the ward, to establish the ward's abode, to make medical decisions for the ward, and, in the absence of a conservator, to control the ward's estate. Within the same statute, the legislature provided generally that guardians shall have "the same powers, rights and duties ... that a parent has respecting his unemancipated minor child."

Moreover, the legislature defined in even broader terms the superior court's power to protect the incapacitated. A.R.S. section 14–1302(A) (1975) gives the superior court jurisdiction "over *all* subject matter relating to ... [p]rotection of ... incapacitated persons." (*emphasis added*). And section 14–1302(B) gives the superior court "full power to make orders, judgments and decrees and take all other action necessary and proper to administer justice" in matters relating to the incapacitated. I find these laws broadly enough drafted to include marital dissolution among the needs that a guardian may assert and that the superior court may meet.

The trial court concluded otherwise, based on a restrictive reading of A.R.S. section 14–5312(A). A guardian, according to the trial court's reading of that statute, can exercise no power on behalf of a ward that a parent cannot exercise for an unemancipated minor child. The trial court reasoned that a parent cannot seek dissolution for an unemancipated minor child "because if the child is validly married, the child is no longer an unemancipated minor." Accordingly, the trial court concluded, a guardian lacks authority to seek dissolution for a ward.

I do not find the trial court's reading of section 14–5312(A) implausible. I do find it inconsistent, however—for a reason the majority does not discuss—with our supreme court's *Rasmussen* decision. 154 Ariz. at 221 n. 20, 741 P.2d at 688 n. 20. In *Rasmussen*, the supreme court permitted a guardian to refuse vital medical care on behalf of an incapacitated ward, but expressly declined to hold that a parent can refuse such care on behalf of an unemancipated minor child. *Id.* Had the *Rasmussen* court regarded parental authority as the test of a guardian's authority to act for a ward, the court would have necessarily faced as a threshold issue whether a parent

can refuse vital medical treatment on behalf of a child. Instead, the court sidestepped the threshold and construed the guardian's power as potentially broader than the parent's. Given *Rasmussen,* I join the majority in concluding that the analogy to a parent's power in section 14–5312 merely conveys "the general breadth of a legal guardian's powers ... [and does not] precisely define the outer limits of those powers." Majority Opinion, at 440, 850 P.2d 678.

I thus agree, up to a point, with the majority's treatment of a guardian's ability to file for marital dissolution as an important means of protecting an incapacitated ward against a competent spouse's exploitation or abuse. It would be inaccurate, however, to conclude from the court's opinion that dissolution is the only legal means of achieving such protection. The court has erected a rather steep evidentiary hurdle for a guardian who seeks to dissolve the marriage of a ward. Guardians unable to produce clear and convincing evidence of the ward's intent or attitude toward the marriage [1], or reluctant for other reasons to pursue dissolution, have a range of alternative protective options.

For example, in the absence of a conservator, a guardian may take control of the ward's estate, including the ward's share of community property,[2] and petition the superior court for orders protecting that property and providing for the ward's support. *See* A.R.S. § 14–5312(A)(2), (4), and (5). A guardian may also file for an order of protection, *see* A.R.S. § 13–3602 (1992), or a decree of legal separation, *see* A.R.S. § 25–313 (1991). Further, as previously noted, the superior court has "jurisdiction over all subject matter" and "full power to ... take all ... action necessary and proper to administer justice" in matters of the incapacitated. A.R.S. § 14–1302; *see also* A.R.S. § 14–5402 (1975) (jurisdiction of the court to determine how the protected person's estate "shall be managed, expended or distributed"); A.R.S. § 14–5409 (1975) (authority of the court to take various measures relating to the protected person's estate and to provide for the protected person's "security, service or care"); § 14–5408(A)(3) (1992) (authority of the court to exercise, with certain exceptions, "all the powers over [the protected person's] estate and affairs which he could exercise if present and not under disability.").

Dissolution, in short, is not the only protective option that a guardian may pursue. However, with due consideration for the values and wishes of the ward, *see* A.R.S. § 14–5312(A)(11), it is one among the broad and flexible range of protective orders and decrees that Title 14 permits the superior court to issue and a guardian to seek.

Because our decision does not rest on the dissolution provisions of Title 25, but rather on the broad guardianship provisions of Title 14, I regard it less as a matter of statutory interpretation than of filling a statutory gap. But in such a gap-filling exercise it is best to acknowledge the limits of the judicial role. If the legislature has not yet focused on the problem of pursuing dissolution for an incompetent ward, it ought to do so now. Although the court today approves a substituted-judgment standard (requiring proof of the ward's intent when competent) for a guardian's dissolution suit, it prudently abstains from deciding whether a guardian, unable to meet that standard, might achieve dissolution by proving the ward's best interest. While it is unnecessary in this case to decide that question, litigation abhors a vacuum; it will need to be decided before long. There is a range of experts and a community of interests that might contribute to an informed examination of the problems and requirements of dissolution actions for those too incapacitated to indicate their

---

1. A.R.S. section 14–5312(A)(11) provides, "In making decisions concerning his ward, a guardian shall take into consideration the ward's values and wishes."

2. A.R.S. section 14–1201(13) (1992) defines "estate" to include "all of the property of the ...

[protected] person." It further provides as to married persons, "In the case of a husband or wife, the estate includes only the separate property *and the share of the community property* belonging to the ... [protected] person." (emphasis added).

present intent. The legislature can draw on that community of interests far more effectively than the courts. Accordingly, before the courts are drawn by necessity further into the statutory gap, this subject is ripe for legislative attention.