RENDERED: JANUARY 21, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0065-MR

CHARLES E. BROOKS BY ELDERSERVE,                    APPELLANT
INC., LEGAL GUARDIANS


|  | ON APPEAL FROM COURT OF APPEALS |
|---|---|
| V. | NO. 2019-CA-1589 |
|  | JEFFERSON CIRCUIT COURT NO. 19-CI-501173 |


HONORABLE TARA HAGERTY,                                APPELLEE
JEFFERSON CIRCUIT COURT JUDGE,
FAMILY DIVISION 5


AND


TAYLOR TONEY                            REAL PARTY IN INTEREST


**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

Pending in Jefferson Family Court is an annulment action in the marriage of Charles E. Brooks and Taylor Toney. Elderserve, Inc. brought the action as Brooks' guardian. Elderserve, Inc., on Brooks' behalf, then sought to amend the annulment petition to include a petition for a dissolution of Brooks and Toney's marriage in order to confer upon the family court jurisdiction over contested property. The family court denied the motion to amend, citing

*Johnson v. Johnson*'s[1] prohibition against guardians initiating an action for divorce on behalf of their wards.

Elderserve then sought a writ of mandamus from the Court of Appeals directing the Jefferson Family Court to grant its motion to amend the annulment petition to include a petition for dissolution of marriage on behalf of Brooks. The Court of Appeals denied the writ petition also relying on our holding in *Johnson.* We note that both the Jefferson Family Court and the Court of Appeals, while citing *Johnson* as authority, requested that we reevaluate the value of *Johnson* as a controlling precedent.

Elderserve, for Brooks, appeals to this Court from the Court of Appeals' denial of its petition for a writ, seeking this Court's reexamination of *Johnson.* We conclude that the trial court's denial of the motion to amend the annulment petition was not in error as *Johnson* was good precedent at the time the court entertained Elderserve's petition. However, we reevaluate *Johnson* and set forth the procedure heretofore for this matter and others like it. After a thorough review of the case law and statutes, we hold that changes to the Kentucky guardianship statutes since *Johnson*'s rendering no longer justify its complete prohibition of guardian-initiated divorces. Realizing the significant change this presents, we take this opportunity to describe the legal steps which must be followed by a guardian before he or she can petition for a divorce for his or her ward. Because this procedure was not followed prior to Elderserve's motion to

---

[1] 170 S.W.2d 889 (Ky. 1943).

amend was filed, we hold that the trial court did not err in denying the motion to amend. Accordingly, we affirm the decision of the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying action in this case is an annulment of marriage. Charles E. Brooks and Taylor Toney were married in February 2017. At the time of their marriage, Brooks was seventy-six years old and blind; Toney was twenty-nine years old. Toney had been a caretaker for Brooks' wife until her death.

In late 2018, the Cabinet for Health and Family Services' Adult Protective Services (APS) was alerted to facts indicating Brooks was the victim of elder abuse and initiated an investigation. APS found Brooks to be neglected and in poor physical condition, and in November 2018, APS initiated an emergency action for guardianship. The subsequent APS investigation substantiated the allegation of exploitation and identified Toney as the agent responsible for Brooks' exploitation and neglect. On January 25, 2019, the Jefferson District Court found Brooks to be wholly disabled in managing his personal and financial affairs and appointed APS as an emergency guardian with the powers and duties of both a guardian and conservator under KRS Chapter 387. On April 1, 2019, the court made the emergency guardianship permanent, appointing Elderserve, Inc. as Brooks' third-party guardian. Elderserve found evidence indicating Brooks was not competent to enter into marriage at the time of the marriage and, on behalf of Brooks, filed a petition for annulment on April 15, 2019.

3

Prior to APS's intervention and Elderserve's appointment, Toney obtained powers of attorney from Brooks which enabled her to liquidate and transfer the preponderance of Brooks' real and personal property to herself. These transfers included Brooks' non-marital home, which Toney used the power of attorney to sell. She deposited the proceeds of the sale into a joint account and then transferred those proceeds into accounts solely in her name. Toney used these proceeds to purchase real estate titled solely in her name. These transfers conveyed to Toney the bulk of Brooks' financial resources, resources that Elderserve identified as necessary for Brooks' continued care.[2]

Elderserve moved to recover Brooks' assets, but the family court correctly questioned whether it had jurisdiction over the real property as part of the annulment action.[3] In response, Elderserve sought, and received, from the district court permission to file a *lis pendens* notice against the property Toney acquired with Brooks' assets.[4] Elderserve then moved to amend the annulment action to add a petition for dissolution of marriage, an amendment to which Toney objected. The family court denied Elderserve's motion to amend, citing

---

[2] Additionally, Toney is alleged to have continued to misappropriate Brooks' pension checks after Elderserve had been appointed guardian and her powers of attorney invalidated. She is under felony indictment in Jefferson County for multiple counts of theft and forgery in connection with these actions (19-CR-002867).

[3] We note that this question was not presented to us, and we decline to address it today.

[4] While not in the record before us, we take judicial notice of the Jefferson Family Court's issuance of a status quo order in connection with this case on June 17, 2019. Both the district and family courts used the tools at their disposal to protect Charles Brooks to the extent available, given the facts before them and the state of the law.

*Johnson*'s firm prohibition of guardian-initiated divorces. In the denial order, the family court indicated it found the concurrence from *Riehle v. Riehle*[5] persuasive and agreed that *Johnson* should be reexamined; despite this, it felt precluded from disregarding *Johnson*'s direct prohibition of guardian-initiated dissolutions.

Elderserve then sought a writ of mandamus from the Court of Appeals instructing the family court to permit Elderserve, on Brooks' behalf, to amend the annulment action to include a petition for dissolution. The Court of Appeals held that Brooks had an adequate remedy by appeal. Specifically, the Court of Appeals held that, unlike a dissolution of marriage, annulments may be appealed, and such an action was open to Brooks. Additionally, Brooks could appeal the denial of the motion to amend. It stated Brooks failed to show the family court erred in applying *Johnson* and stated that any amendment would be futile due to *Johnson*'s prohibition. While it denied Brooks' request for a writ, the court stated that "the time has come to reconsider the wisdom of *Johnson*'s prohibition of guardians maintaining dissolution actions on behalf of an incompetent person." Brooks, through Elderserve, urges this Court to reevaluate *Johnson* and reverse the Court of Appeals' denial of his petition for a writ of mandamus. Toney failed to file a response brief to this Court, and

---

[5] 504 S.W.3d 7 (Ky. 2016).

pursuant to CR[6] 76.12(8)(c), we choose to accept the Appellant's recitation of facts and issues as true.[7]

## II. STANDARD OF REVIEW

Writs are an extraordinary remedy "disfavored by our jurisprudence. We are, therefore, 'cautious and conservative both in entertaining petitions for and in granting such relief.'"[8] We reserve the right to issue writs to those "situations where litigants will be subjected to substantial injustice if they are required to proceed."[9] Extraordinary writs may be granted in two classes of cases. The first class requires a showing that "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court."[10] The second requires a showing that "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise."[11] This second class also usually requires a showing that "great injustice and irreparable injury will result if the petition is not granted."[12] There are,

---

[6] Kentucky Rules of Civil Procedure.

[7] *See also St. Joseph Catholic Orphan Society v. Edwards*, 449 S.W.3d 727, 732 (Ky. 2014); *Callahan v. Callahan*, 579 S.W.2d 385, 386 (Ky. App. 1979).

[8] *Caldwell v. Chauvin*, 464 S.W.3d 139, 144-45 (Ky. 2015) (citing *Ridgeway Nursing & Rehab. Facility, LLC v. Lane*, 415 S.W.3d 635, 639 (Ky. 2013); *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)).

[9] *Indep. Order of Foresters v. Chauvin*, 175 S.W.3d 610, 615 (Ky. 2005).

[10] *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004).

[11] *Id.*

[12] *Id.*

however, special cases within the second class of writs that do not require a showing of great injustice and irreparable injury. In those special cases, a writ is appropriate when "a substantial miscarriage of justice" will occur if the lower court proceeds erroneously, and "correction of the error is necessary in the interest of orderly judicial administration."[13] Even in these special cases, the party seeking a writ must show that there is no adequate remedy by appeal.[14] "No adequate remedy by appeal" means that the party's injury "could not thereafter be rectified in subsequent proceedings in the case."[15] Brooks and Elderserve seek a writ of mandamus under the second class of writs.

### III. ANALYSIS

For a writ of the second class, the applicant must show an error by the court below that will result in great harm or irreparable injury that cannot be adequately rectified by appeal or otherwise.[16] And even if an appeal is shown to be inadequate or unavailable, the applicant must still show that he will suffer a "great injustice or irreparable harm" if a writ is not issued.[17] Kentucky courts have repeatedly defined "great and irreparable harm" as "something of a ruinous nature."[18] As we summarized the law in *Caldwell*, in cases seeking a

---

[13] *Chauvin*, 175 S.W.3d at 616 (quoting *Bender*, 343 S.W.2d at 801).

[14] *Id.* at 617.

[15] *Id.* at 615 (quoting *Bender*, 343 S.W.2d at 802).

[16] *Caldwell*, 464 S.W.3d at 145 (citing *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004)).

[17] *Hoskins*, 150 S.W.3d at 6.

[18] *Bender*, 343 S.W.2d at 801.

second-class writ, we typically approach first the elements of no adequate remedy by appeal and great injustice and irreparable harm as prerequisites, but may proceed directly to the merits of the dispute when doing so promotes "judicial economy in limiting the breadth of analysis appellate courts undertake when considering writs."[19]

In denying the writ petition, the Court of Appeals held that Brooks had the ability to appeal the family court's denial of his motion to amend by appealing any grant of annulment and the denial of the motion to amend. Furthermore, the court stated that Brooks had failed to establish the family court was acting erroneously. While technically correct with regard to Brooks' rights by appeal, by denying the writ the Court of Appeals caused Brooks to face two unjust choices. First, he could accept the annulment and, through his guardian, proceed in a separate civil action against Toney to recover his property. Alternatively, he could appeal the annulment based on the family court's denial of the motion to amend, likely resulting in a series of appeals ending with the parties seeking this Court's reexamination of *Johnson.* Either choice proceeds against a backdrop where Brooks is being cared for as a ward of the state without the comforts that the resources he accumulated through his life should afford him. Delays also increase the risk of Toney, despite any possible court orders to the contrary, further dissipating the assets she controls and increasing the difficulty of tracing those that she may have

---

[19] *Caldwell,* 464 S.W.3d at 145, 146 n.16 (quoting *So. Fin. Life Ins. Co. v. Combs,* 413 S.W.3d 921, 927 n.16 (Ky. 2013)).

transferred. Therefore, even should Brooks survive long enough to emerge victorious under either scenario, the intervening time diminishes the chance that any resulting judgment can fully or adequately compensate him. Brooks, therefore, may have a remedy by appeal, but we find the remedy inadequate in light of the above-described circumstances. Based on those same circumstances, we further conclude that Brooks' damages amount to great and irreparable harm.

While the Court of Appeals incorrectly stated Brooks had an adequate remedy by appeal, it correctly identified that Brooks had not shown the family court was acting erroneously. The Court of Appeals was correct that the family court was not required to accept Brooks' petition for dissolution, but we base our holding on different reasoning. The family court understandably relied on *Johnson*; however, we hold today that *Johnson*'s interpretation of the 1942 statutes justifying a complete prohibition of a guardian-initiated dissolution of marriage is no longer applicable under our current statutory scheme.

In reviewing *Johnson* and Brooks' argument to permit guardian-initiated dissolutions of marriage, we are, "as always, mindful of the value of precedent and the doctrine of stare decisis."[20] In the interest of stability, stare decisis directs us to adhere to prior decisions absent "sound legal reasons to the

---

[20] *Parker v. Webster Cty. Coal, LLC (Dotiki Mine)*, 529 S.W.3d 759, 766 (Ky. 2017) (quoting *Osborne v. Keeney*, 399 S.W.3d 1, 16 (Ky. 2012)).

contrary."[21] "But it is not a universal, inexorable command[,]"[22] and "[w]hile stare decisis 'permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals,' it does not necessitate that this Court 'unquestioningly follow prior decisions' when we are otherwise compelled."[23] This is particularly true when such decisions were based on the interpretation of statutes which have undergone fundamental revisions.

The *Johnson* Court articulated a firm rule that guardians may not initiate an action for dissolution of marriage on behalf of their wards.[24] This rule represented the majority rule, in fact almost universal rule, at the time that such actions were too personal and volitional to permit them to be pursued at the pleasure of a guardian, even if it resulted in a marriage that was "indissoluble on behalf of the incompetent."[25] That Court relied on the fact that the guardianship statutes of the Commonwealth were general in nature and held that those statutes were not intended to confer on a guardian the power over strictly personal and volitional affairs such as marriage.[26] The *Johnson* Court further held that absent "specific legislative declaration to the contrary,

---

[21] *Hilen v. Hays*, 673 S.W.2d 713, 717 (Ky. 1984).

[22] *Williams v. Wilson*, 972 S.W.2d 260, 269 (Ky. 1998) (Stephens, C.J., concurring) (quoting *Washington v. W.C. Dawson & Co.*, 264 U.S. 219, 238 (1924) (Brandeis, J., dissenting)).

[23] *Osborne*, 399 S.W.3d at 16-17.

[24] 170 S.W.2d at 890.

[25] *Id.* at 889 (citing 17 A.J. 290).

[26] *Id.* at 890.

[a marriage's] continuance or dissolution should not be dependent on the pleasure or discretion of a legal representative."[27]

This case represents the third time our Court of Appeals has relied on *Johnson.* In all three instances, the lower courts felt precluded from ruling for an appellant seeking a dissolution of marriage but questioned the continued viability of *Johnson*'s complete prohibition.[28]

This Court's most recent opportunity to address *Johnson* was in *Riehle v. Riehle.*[29] In *Riehle,* the husband was under a guardianship order with his wife serving as the guardian.[30] The husband grew frustrated with his wife's control of his assets and filed a petition for divorce.[31] The trial court dismissed the husband's claim, an action which the Court of Appeals affirmed.[32] Both courts relied exclusively on *Johnson* for their actions, and the husband appealed to

---

[27] *Id.*

[28] *See Brooks v. Hagerty,* No. 2019-CA-001589-OA (Ky. App. 2019) ("This Court agrees that the time has come to reconsider the wisdom of *Johnson's* prohibition of guardians maintaining dissolution actions on behalf of an incompetent person."); *Riehle v. Riehle,* No. 2014-CA-000372-MR, 2015 WL 6560528, *3 (Ky. App. Oct. 30, 2015) ("After performing a lengthy analysis of the public policy implications of such an action, a majority of the panel nonetheless concluded that this Court was bound by the *Johnson* precedent."); *Brockman ex rel Jennings v. Young,* No. 2010-CA-001354-MR, 2011 WL 5419713, *4 (Ky. App. Nov. 10, 2011) ("We believe that the liberalization of divorce law with the creation of no-fault divorce as well as the expansion of guardianship powers certainly call in to question the viability of the holding in *Johnson.*").

[29] 504 S.W.3d 7 (Ky. 2016).

[30] *Id.* at 8.

[31] *Id.*

[32] *Id.*

this Court urging us to reverse *Johnson.*[33] Despite the lower courts' reliance on

*Johnson,* a majority of this Court found that *Johnson* was not implicated by the

facts.[34] In *Riehle,* the appellant was not a guardian seeking a divorce on behalf

of its ward but was, in fact, the incompetent spouse seeking a divorce in his

own right.[35] Under Kentucky statutes, such an individual cannot maintain the

action in his own right.[36] Therefore, the majority found that the issue of

whether *Johnson* still represented good law was not before the Court and

affirmed the trial court and Court of Appeals, albeit for different reasons.[37]

Justice Wright, writing for a three-justice concurrence, agreed with the

majority that an individual adjudicated incompetent cannot maintain an action

for dissolution of marriage, but would have addressed the ancillary question of

whether a guardian could maintain such an action on behalf of the disabled

party.[38] The concurrence would have permitted the appellant to return to the

district court and seek the appointment of a limited guardian for purposes of

determining whether a dissolution of marriage was in the appellant's best

interest.[39] The concurrence emphasized that *Johnson* was almost seventy years

old and decided under a legal and statutory regime surrounding both

---

[33] *Id.*

[34] *Id.* at 9.

[35] *Id.*

[36] *Id.* (citing CR 17.03).

[37] *Id.*

[38] *Id.* at 9-10 (Wright, J., concurring).

[39] *Id.* at 10 (Wright, J., concurring).

guardianship and divorce that was "entirely different."[40] The present

guardianship statutes are intended "to provide services for incompetent

persons not only as specifically articulated but also as reasonably inferable

from the nature of the powers of a guardian."[41] "We believe that the

liberalization of divorce law with the creation of no-fault divorce as well as the

expansion of guardianship powers certainly call in to question the viability of

the holding in *Johnson*."[42] The concurrence would have held that while the

current guardianship statutes do not specifically enumerate a power to initiate

a divorce, such a failure does not automatically preclude a trial court from

permitting such an action under the guardian's duty "to have full care,

custody, and control of a disabled person" under KRS 387.510.[43]

With our decision in *Johnson*, Kentucky joined the majority of

jurisdictions that imposed such restrictions, a majority so overwhelming that it

was almost universal at the time. That majority is no longer nearly universal; it

is even questionable whether it truly represents a majority.[44] This shift is

---

[40] *Id.* (Wright, J., concurring).

[41] *Id.* at 11 (Wright, J., concurring) (quoting *DeGrella By & Through Parrent v. Elston*, 858 S.W.2d 698, 704 (Ky. 1993)).

[42] *Id.* (Wright, J., concurring) (quoting *Brockman*, 2011 WL 5419713 at *4).

[43] *Id.* We note that the current version of KRS 387.510 has revised the guardian definition to eliminate the specific phrase of "full care, custody, and control."

[44] *See* Matthew Branson, *Guardian-Initiated Divorces: A Survey*, 29 J. Am. Acad. Matrim. Law. 171 (2016). Branson's survey reveals fifteen states that permit some form of guardian-maintained divorce. Conversely, only twelve states have case law explicitly denying such an action in all circumstances. The law in the remaining states is uncertain, as they either have not directly addressed the issue in the last half

particularly evident when specifically considering only the jurisdictions that

have addressed the issue within the past forty years.[45] States permitting a

guardian to maintain a dissolution action rely on a statutory basis or a court-

derived right applying the court's "substituted judgment" or a "best interest"

analysis.[46] Many courts analyzing guardianship statutes have not required

such statutes to explicitly permit actions for divorce but instead have relied on

---

century, or when it has been addressed, it has been in dicta and in such a way as to call into question whether the state would apply an absolute prohibition.

[45] Kurt X. Metzmeier *The Power of an Incompetent Adult to Petition for Divorce Through A Guardian or Next Friend*, 33 U. Louisville J. Fam. L. 949 (1995) ("Twelve of the fifteen states that have examined the issue [guardian-initiated divorce] in the last two decades have rejected this rule [that such actions were not allowed]."); *see Ruvalcaba v. Ruvalcaba*, 850 P.2d 674 (Ariz. Ct. App. 1993); *In re Marriage of Higgason*, 516 P.2d 289 (Cal. 1973); *Knight v. Radomski*, 414 A.2d 1211 (Me. 1980); *Smith v. Smith*, 335 N.W.2d 657 (Mich. Ct. App. 1983); *In re Parmer*, 755 S.W.2d 5 (Mo. Ct. App. 1988); *Kronberg v. Kronberg*, 623 A.2d 806 (N.J. Super. Ct. Ch. Div. 1993); *Boyd v. Edw*

*ards*, 446 N.E.2d 1151 (Ohio Ct. App. 1982); *In re Ballard*, 762 P.2d 1051 (Or. Ct. App. 1988); *Syno v. Syno*, 594 A.2d 307 (Pa. Super. Ct. 1991); *Murray v. Murray*, 426 S.E.2d 781 (S.C. 1993); *Wahlenmaier v. Wahlenmaier*, 750 S.W.2d 837 (Tex. Ct. App. 1988); *In re Marriage of Gannon,* 702 P.2d 465 (Wash. 1985).

[46] *See generally* Ill. Prob. A. § 11a-17 (Circuit court may find by clear and convincing evidence that divorce is in the ward's best interest.); *Ruvalcaba*, 850 P.2d at 682 ("[W]e therefore find that the 'substituted judgment' standard is the appropriate standard to be applied by a trial court in determining whether a ward desires to dissolve her marriage in cases, such as this one, where evidence of the ward's desires when competent exists."); *Vaughan v. Guardianship of Vaughan*, 648 So. 2d 193 (Fla. Dist. Ct. App. 1994) (Florida guardianship statutes are sufficiently broad to permit guardian-initiated divorce, but such action must incorporate an adversarial hearing to establish best interest before it may be commenced.).

general powers of guardians.[47]  Such analysis is consistent with the

concurrence's reasoning in *Riehle*.[48]

The guardianship statutes *Johnson* interpreted were vastly more limited

than today's statutes and were generally a derivation of the statutes associated

with the guardianship of minors.[49] At that time, the specifically enumerated

guardian powers and responsibilities focused on the oversight of the ward's

property, income, and expenses and lacked any specific guidance regarding the

ward's personal or civil rights.[50] The *Johnson* Court found that a simple

authority that guardians "may sue or be sued" on behalf of their ward was

insufficient to provide power with regard to such a personal issue as divorce.[51]

---

[47] *See Broach v. Broach*, 895 N.E.2d 640, 642 (Ohio App. 2 Dist. 2008) (concluding that because the statute authorizing a guardian to initiate a suit on behalf of his or her ward does not explicitly exclude divorce actions, a guardian has the authority to initiate such actions); *Houghton ex rel. Johnson v. Keller*, 662 N.W.2d 854, 856 (Mich. App. 2003) ("Nothing in the language of M.C.L. § 552.6 expressly prohibits guardians from filing a complaint for divorce on behalf of a party to the marriage."); *Kronberg v. Kronberg*, 623 A.2d 806, 810 (N.J. Super. Ch. Div. 1993) ("It is significant that while the Legislature conferred a broad, nonexclusive list of powers on a guardian, the only power that was withheld was the power to make a will.*"); In re Ballard*, 762 P.2d 1051, 1052 (Or. App. 1988) (concluding that a guardian has the authority to initiate a divorce action on his or her ward's behalf because the statute authorizing a guardian to initiate a suit on behalf of his or her ward does not explicitly exclude divorce actions); *McRae v. McRae*, 250 N.Y.2d 778, 780 (N.Y. Sup. Ct. 1964) ("*Without some basis for such an implication, we may not assume that the Legislature, though providing a remedy by action for the failure of a party to carry out matrimonial obligations, impliedly limited these remedies to a sane spouse.*") (emphasis in original).

[48] 504 S.W.3d at 11 (Wright, J., concurring).

[49] *See* KRS 387.210 (1942) (the committee's "power and duty...shall, in all respects, be the same as those of the guardian of a minor...").

[50] *See* KRS 387.060(1) (1942) ("A guardian shall have the custody of his ward, and the possession, care and management of the ward's property, real and personal."); *see generally* KRS 387.210-286 (1942).

[51] KRS 387.130 (1942); *Johnson*, 170 S.W.2d at 890.

15

Conversely, today's statutes are much more comprehensive. KRS 387.640(1) imposes a very broad duty on the guardian to "[a]ssure that the personal, civil, and human rights of the ward are protected[.]" A guardian's specific duties include seeing to the ward's financial well-being,[52] providing for the ward's care, comfort, and maintenance,[53] and consenting to necessary medical care.[54] Notably, while guardians may consent to necessary medical care, KRS 387.660(3) limits the guardian's ability when those treatments are of a highly personal nature such as abortion, sterilization, or amputation. For these treatments, the guardian must obtain court approval prior to the treatment unless it is an emergency.[55] In a full guardianship, where the guardian is also serving as the conservator, he or she is responsible for ensuring the protection and preservation of the ward's estate and prosecuting or defending actions and claims in "any jurisdiction for the protection of the estate's assets."[56] Guardians must also file an annual report with the district court summarizing the ward's current mental, physical, and social condition,

---

[52] *See* KRS 387.125(6) ("A guardian may institute or defend actions, claims, or proceedings in any jurisdiction for the protection of the ward's estate."); KRS 387.680(1) (A conservator has the duty to "[m]anage or assist in managing those financial resources placed under his supervision and/or control as would a prudent person managing his own resources[.]").

[53] KRS 387.660(5).

[54] KRS 387.660(4).

[55] KRS 387.660(3).

[56] KRS 387.700(1). The authorized types of guardianships and conservatorships are delineated in KRS 387.590.

and upon review, the court may "take whatever action it considers necessary to enhance the well-being of the ward."[57]

In reviewing Kentucky's guardianship statutes, we conclude that the legislative changes since *Johnson* render continued reliance on *Johnson*'s strict prohibition of a guardian-initiated divorce unwarranted. The expanded guardian duties, coupled with a more complex elder law environment, make *Johnson* inapplicable to the current legal environment. We overrule *Johnson* to the extent it prohibits a guardian from initiating a dissolution action on behalf of a ward. However, we continue to agree with *Johnson*'s defining statement that the dissolution of a ward's marriage "should not be dependent on the pleasure or discretion of a legal representative."[58] As such, we view a dissolution of marriage as more analogous to the personally invasive medical procedures identified in KRS 387.660(3), and a guardian may not initiate such actions unilaterally. KRS 387.530 vests the district courts with exclusive jurisdiction over all guardianship proceedings. Therefore, a guardian may seek permission from the district court overseeing the guardianship to initiate a dissolution of marriage action on behalf of his or her ward. The district court shall hold a hearing to determine if such an action is in the ward's best interest and if so satisfied may authorize the guardian to file such an action with the family court consistent with its authority and responsibility under KRS

---

[57] KRS 387.670.

[58] *Johnson*, 170 S.W.2d at 890.

387.670(3). The ward should be permitted to "participate to the maximum extent of his abilities."[59] If feasible, the hearing should include an opportunity for the competent spouse to offer evidence as to why the dissolution of marriage is not in the ward's best interest. Where the petitioning guardian stands to personally benefit from his ward's divorce, the court may appoint a limited guardian for purposes of representing the ward's interest in the matter.

We have accepted Brooks' rendition of the facts as true pursuant to CR 76.12, but no district court has made a best interest determination as to the matter of Brooks' divorce. To pursue a dissolution of marriage action, Brooks, through Elderserve, must establish facts sufficient for the district court overseeing his guardianship to find a dissolution of marriage action on his behalf is in his best interest. If the district court makes such a finding, the court shall authorize Elderserve to file a petition for dissolution with the Jefferson Family Court. This matter shall be expedited.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the Court of Appeals' denial of the writ petition. Should Brooks follow the procedure outlined in this Opinion and obtain a favorable finding from the district court, he can again petition the Jefferson Family Court for a dissolution of marriage.

All sitting. All concur.

---

[59] KRS 387.640(2).

18

COUNSEL FOR APPELLANT:

Teresa M. Kinberger

APPELLEE:

Honorable Tara Wigginton Hagerty, Judge
Jefferson Circuity Court, Family Division 5

COUNSEL FOR APPELLEE/REAL PARTY IN INTEREST, TAYLOR TONEY:

Richard Hafford Nash, III

COUNSEL FOR AMICI CURIAE, GADD, FORMER COMMISSIONER OF THE
KENTUCKY DEPARTMENT FOR AGING AND INDEPENDENT LIVING; AND
KENTUCKY GUARDIANSHIP ASSOCIATION, INC:

Shari Polur

COUNSEL FOR AMICUS CURIAE, NATIONAL ACADEMY OF ELDER LAW
ATTORNEYS, INC.:

Marianna Joy Michael